UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEPHEN BERO,

            Plaintiff,

   v.

STATE FARM FIRE AND CASUALTY COMPANY,

            Defendant.

CASE NO. 3:24-cv-05017-GJL

ORDER DENYING PLAINTIFF'S MOTION TO REMAND

This matter is before the Court on Plaintiff Stephen Bero's Motion to Remand to state court. Dkt. 11. Having considered Plaintiff's request, Defendant's response, and the remaining record, the Court **DENIES** the Motion (Dkt. 11) for the reasons explained below.

### I.    BACKGROUND

Plaintiff alleges that he suffered water damage to his home caused by a plumbing leak in his kitchen on August 5, 2023. Dkt. 1-1 at 2. At the time, Plaintiff maintained a homeowners' insurance policy through Defendant, which provided indemnity coverage for loss of premises at the home. *Id.* Plaintiff filed an insurance claim with Defendant, who initially accepted coverage for the water loss. *Id.* Plaintiff alleges that he accepted State Farm's offer to use its preferred

vendor for the repairs, All American Restoration Services ("All American"), who inspected Plaintiff's home and provided a quote of $32,734.38 to Defendant for approval. *Id.* Defendant revised the quote to $19,596.16, thereby reducing the scope of repairs "to the point where All American did not feel confident it could restore Plaintiff's home to its pre-loss condition." *Id.* at 3. According to Plaintiff, Defendant never sent the reduced estimate to Plaintiff or explained to him why it reduced the scope of work. *Id.*

Plaintiff alleges that Defendant failed to investigate the full scope of necessary repairs and failed to pay the reasonable cost of repair, leaving Plaintiff without use of his kitchen for several months. *Id.* He further alleges that Defendant never explained to Plaintiff that his policy afforded coverage for Additional Living Expenses ("ALE") incurred and failed to pay ALE benefits owed under the policy. *Id.* Plaintiff thereby asserts claims for (1) breach of contract; (2) insurance bad faith; (3) violations of Washington's Insurance Fair Conduct Act ("IFCA"); (4) violations of the Washington Consumer Protection Act ("CPA"); and (5) negligence. *Id.* at 4–5.

## II.    DISCUSSION

Under 28 U.S.C. § 1441(a), "[a] defendant generally may remove an action filed in state court if a federal district court would have had original jurisdiction over the action," *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018), which may be based on diversity of parties when the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citing 28 U.S.C. § 1332(a)) (cleaned up).

To determine whether the facts supporting removal are ascertainable, Ninth Circuit courts apply the "unequivocally clear and certain" standard. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021). Other circuits applying this standard have held that the papers must provide

1    specific and unambiguous information that shows the case is removable. *Berera v. Mesa Med.*

2    *Grp., PLLC*, 779 F.3d 352, 364 (6th Cir. 2015); *Walker v. Trailer Transit, Inc.*, 727 F.3d 819,

3    825 (7th Cir. 2013).

4    Courts use two legal standards to assess whether a defendant has met its burden of

5    showing the case exceeds the amount in controversy minimum. *Gierke v. Allstate Prop. & Cas.*

6    *Ins. Co.*, No. C19-0071JLR, 2019 WL 1434883, at *2 (W.D. Wash. Apr. 1, 2019). The first

7    standard applies when satisfaction of the amount in controversy is "facially apparent" from the

8    complaint. Thus, if the plaintiff claims a dollar amount in controversy on the face of their

9    complaint, the defendant can generally rely on the sum claimed when removing the case. *See*

10   *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

11   The second standard applies when the plaintiff's requested damages are unclear. *Gierke*,

12   2019 WL 1434883, at *2 (citing *Singer*, 116 F.3dd at 376). In that instance, the defendant bears

13   the burden of proving, by a preponderance of evidence, that the amount in controversy exceeds

14   $75,000.00. *Id.* In determining the amount in controversy, the court considers facts in the

15   removal petition and any relevant "summary judgment-type evidence." *Id.* In weighing the

16   evidence, the court considers "the reality of what is at stake in the litigation, using reasonable

17   assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs.,*

18   *Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).

19   Here, there is no dispute about whether there is complete diversity between the parties;

20   the only question before the Court is whether the amount in controversy exceeds $75,000. Dkt.

21   11 at 4–6. In its Notice of Removal, Defendant argues that the "estimated cost of repair of

22   $32,734.38, together with attorney's fees, costs, exemplary and enhanced damages under IFCA,

23   and treble damages pursuant to [CPA]" exceeds the jurisdictional threshold of $75,000. Dkt. 1 at

24

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 3

2. Plaintiff notes in the present Motion, however, that on December 19, 2023, Defendant "issued a check to Plaintiff in the amount of $20,008.81 for a portion of the dwelling repair costs Plaintiff seeks to recover in this matter." Dkt. 11 at 2. Defendant acknowledges this fact in its Response but argues that "the amount of controversy is determined at the time of filing and not affected by a later payment [. . .] the amount is determined from the operative complaint at the time of removal." Dkt. 14 at 5 (citing *Chavez v. J.P. Morgan Chase & Co.*, 888 F.3d 413, 414–15. (9th Cir. 2018)). In his Reply, Plaintiff notes that the amount in controversy is determined at the time of removal and, because Defendant made this payment prior to removing the case, the Court must consider the $20,008.81 reduction in its analysis. Dkt. 16 at 2–3.

Defendant's suggested analysis would require the Court to examine the Complaint in a vacuum, despite activity prior to removal reducing the amount Plaintiff can recover. This contradicts the requirement that courts review the amount in controversy *at the time of removal* as explained in *Chavez*, 888 F.3d at 414–15, as well as the requirement to consider "the reality of what is at stake in the litigation." *Ibarra*, 775 F.3d at 1198. Thus, the Court must determine whether Defendant has shown by a preponderance of the evidence that Plaintiff's requested damages, when reduced by $20,008.81, exceed $75,000.

Subtracting $20,008.81 from the $32,734.38 contractual damages alleged by Plaintiff leaves $12,725.57 in dispute over repair costs. Because Plaintiff seeks exemplary damages under IFCA ($38,176.71 if treble damages are awarded) and enhanced damages under CPA (limited to $25,000 if treble damages are awarded) the total of these amounts equals $63,176.71 in damages. Dkt. 1-1 at 5. Plaintiff argues that the Court should not consider treble damage amounts because such damages are discretionary and because Defendant "provides no evidence that Plaintiff would be entitled to a maximum treble damages award." Dkt. 16 at 3. The Court disagrees.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 4

"When pressing that the sum of damages meets the statutory minimum, a defendant may rely upon plaintiff's claims of (1) general and specific damages; (2) punitive damages, including treble damages under the CPA, up to $25,000, and treble damages under IFCA; and (3) contractually or statutorily-authorized attorney's fees." *Brumfield v. Standard Fire Ins. Co.*, No. 2:23-CV-0341-TOR, 2024 WL 621093, at *3 (E.D. Wash. Feb. 14, 2024) (collecting cases) (internal citations omitted).

Defendant bridges the remaining gap between $63,176.71 in trebled repair costs and the jurisdictional amount of $75,000 by accounting for (1) attorney fees requested by Plaintiff, which Defendant estimates at around $500-700 per hour based on similar insurance cases; and (2) ALE damages from the cost of renting a separate apartment in Tacoma for seven months, which Defendant estimates at around $1,600 per month based on Tacoma's median rental price. Dkt. 14 at 9–10. Plaintiff does not substantially refute these estimates in its Reply. Instead, he argues in conclusory fashion that these amounts are "speculation and conjecture" which rely on unreasonable assumptions about Plaintiff's additional living expenses and attorney's fees. Dkt. 16 at 4–5.

The Court finds that Defendant's estimate of additional expenses is reasonable. *See Brumfield*, 2024 WL 621093, at *3 (reasonable estimates of costs may be accepted, so long as it is "more likely than not" that the amount in issue exceeds the jurisdictional threshold) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)); *see also Scott v. Cricket Commc'ns., LLC*, 865 F.3d 189, 196 (4th Cir. 2017) ("Estimating the amount in controversy is not nuclear science, as a removing defendant is somewhat constrained by the plaintiff [. . .] In many removal cases, a defendant's allegations rely to some extent on reasonable

estimates, inferences, and deductions."). Thus, the trebled repair costs under IFCA and CPA, along with estimated costs of ALE and attorney's fees, likely exceed $75,000.

Defendant has shown, by a preponderance of the evidence, that the amount in controversy is greater than the jurisdictional threshold of $75,000. The Court therefore denies Plaintiff's Motion. Accordingly, because the Court finds Defendant has a reasonable basis for removal, attorney's fees under 28 U.S.C. § 1447(c) are not appropriate and the Court denies Plaintiff's request for these costs.

### III.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Remand to state court (Dkt. 11).

Dated this 5th day of April, 2024.

Grady J. Leupold
United States Magistrate Judge